## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:25-cv-00874-O |
| **CARLOS CHING D/B/A H3 MEDICAL CLINIC, LLC,** | § § § § | |
| Defendant. | § § | |

**PLAINTIFF LEGACY MEDICAL CONSULTANTS, LP'S OPPOSITION TO DEFENDANT CARLOS CHING D/B/A H3 MEDICAL CLINIC, LLC'S <u>MOTION TO DISMISS AND BRIEF IN SUPPORT</u>**

**BLANK ROME LLP**
Audrey F. Momanaee
Federal Bar No. 724132
Texas Bar No. 24055993
Gregory J. Moore (admitted *pro hac vice*)
Texas Bar No. 24055999
717 Texas Avenue, Suite 1400
Houston, TX 77002
(713) 632-8613
Audrey.Momanaee@BlankRome.com
Gregory.Moore@BlankRome.com

-and-

Megan A. Altobelli (Local Counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii
I. INTRODUCTION .........................................................................................................1
II. STATEMENT OF FACTS ............................................................................................3
    A. Legacy's Agreement with Ching ......................................................................3
    B. The Texas Contacts ..........................................................................................3
    C. Procedural History ...........................................................................................5
III. ARGUMENT .................................................................................................................5
    A. This Court May Exercise Personal Jurisdiction Over Ching ...........................5
        1. Ching had sufficient minimum contacts with Texas to satisfy personal jurisdiction .................................................................................................7
        2. Legacy's cause of action arose out of Ching's contacts with Texas ............12
        3. This Court's exercise of personal jurisdiction would not be unfair or unreasonable .............................................................................................13
IV. CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ...................................................................................................9

*Bibbs v. Molson Coors Beverage Co. USA, LLC*,
  616 F. Supp. 3d 606 (N.D. Tex. 2022) ..................................................................................15

*Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*,
  642 F. Supp. 3d 560 (E.D. Tex. 2022) ....................................................................................8

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................................5, 9, 10, 11

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*,
  963 F.2d 90 (5th Cir. 1992) ...................................................................................................10

*CSFB 1998-C2 TX Facilities, LLC v. Rector*,
  No. 3:14-CV- 4142, 2015 WL 1003045 (N.D. Tex. Mar. 5, 2015) ........................................16

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*,
  176 F.3d 867 (5th Cir. 1999) ...................................................................................................8

*Fintech Fund, F.L.P. v. Horne*,
  836 F. App'x 215 (5th Cir. 2020) .........................................................................................16

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) ...............................................................................................................10

*Freudensprung v. Offshore Tech. Servs., Inc.*,
  379 F.3d 327 (5th Cir. 2004) .....................................................................................5, 13, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
  466 U.S. 408 (1984) .................................................................................................................9

*Holt Oil & Gas Corp. v. Harvey*,
  801 F.2d 773 (5th Cir. 1986) .............................................................................................5, 14

*Laughlin Energy Motor Sports, LLC v. Americana Pro Detailing Prods. LLC*,
  No. 4:22-CV-00876-P, 2023 WL 1805870 (N.D. Tex. Feb. 7, 2023) ....................................17

*Moncrief Oil Intern. Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) ....................................................................................5, 14, 15

*Religious Tech. Ctr. v. Liebreich*,
    339 F.3d 369 (5th Cir. 2003) ..................................................................................................9

*Sayers Constr., L.L.C. v. Timberline Constr., Inc.*,
    976 F.3d 570 (5th Cir. 2020) ............................................................................................9, 10

*Seiferth v. Helicopteros Atuneros, Inc.*,
    274 F.3d 266 (5th Cir. 2006) ..................................................................................................9

*Stroman Realty, Inc. v. Antt*,
    528 F.3d 382 (5th Cir. 2008) ............................................................................................8, 9

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ..........................................................................................5, 14

*Sw. Offset, Inc. v. Hudco Pub. Co.*,
    622 F.2d 149 (5th Cir. 1980) ................................................................................................10

*Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ................................................................................................18

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ........................................................................................16, 17

**Statutes**

28 U.S.C. § 1441(a) ......................................................................................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, <br>     Plaintiff, <br><br> v. <br><br> CARLOS CHING D/B/A H3 MEDICAL CLINIC, LLC, <br><br>     Defendant. | § § § § § § § § § § § § | Case No. 4:25-cv-00874-O |

**PLAINTIFF LEGACY MEDICAL CONSULTANTS, LP'S OPPOSITION TO DEFENDANT CARLOS CHING D/B/A H3 MEDICAL CLINIC, LLC'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Plaintiff Legacy Medical Consultants, LP hereby submits this Opposition to Defendant Carlos Ching d/b/a H3 Medical Clinic, LLC's ("Ching") Motion to Dismiss. For the reasons stated herein, the Motion should be denied.

## I.    INTRODUCTION

Defendant Ching's Motion to Dismiss should be denied because the record demonstrates clear, purposeful, and substantial contacts with Texas that establish personal jurisdiction and support the sufficiency of Legacy's claims. Ching, a healthcare provider based in Arizona, voluntarily entered into a contractual relationship with Legacy, a Texas-based company, over $3.3 million in proprietary medical products and purchased over three and a half months. In fact, between approximately January 18 and April 1, 2024, Ching placed repeated, high-value orders totaling about $4,147,972.92; he paid roughly $631,835, returned approximately $202,340.16 for credit to Texas, and left $3,313,798.60 unpaid across at least twenty-eight invoices. Every aspect of this business relationship—from execution of the contract, to order processing, product packing, shipment, invoicing, and the contractual obligation to remit payment—was centered in Fort Worth, Texas. Legacy executed the Agreement in Fort Worth; Legacy's Texas personnel processed orders

1

and generated invoices in Texas; shipments originated from Legacy's Fort Worth facility; returns were shipped back to Texas for credit; and the Agreement required payment to Legacy's Texas bank account under a Texas choice-of-law clause. Ching's assurances of payment, followed by his failure to timely pay at least twenty-eight invoices, caused direct and substantial harm to Legacy in Texas. And the Agreement expressly provides that Texas law governs the parties' relationship. These contacts were the product of Ching's deliberate decision to do business with a Texas supplier over multiple months—not random or fortuitous interactions—and Legacy's claims arise directly from those Texas-directed activities. These facts not only satisfy the requirements for specific personal jurisdiction under well-established Fifth Circuit precedent (including *Burger King* and its "highly realistic" contract analysis, and *Ford's* "arise out of or relate to" standard) but also underscore the fairness and appropriateness of litigating this dispute in Texas, where the injury was suffered and where Legacy's business operations are based. Ching's authorities (*e.g., Freudensprung, Holt Oil, Stuart, Moncrief*) are inapposite because those matters involved contracts centered outside Texas, governed by non-Texas law, or isolated contacts; here, performance was centered in Texas, Texas law governs, and Ching engaged in repeated, sizeable transactions with a Texas company. Ching's attempt to avoid accountability in this forum is unavailing in light of his deliberate and ongoing engagement with a Texas entity. Moreover, while removal does not waive personal jurisdiction, Ching's decision to remove to this Court confirms that defending in Texas is not unduly burdensome and that exercising jurisdiction comports with fair play and substantial justice. For these reasons, Ching's Motion should be denied so that Legacy's claims may be adjudicated on the merits. In the alternative, should the Court desire further development of the record, Legacy respectfully requests limited, targeted jurisdictional discovery.

## II. STATEMENT OF FACTS

### A. Ching's Agreement with Legacy's

Legacy is an integrated marketer of proprietary regenerative biomaterial products processed from human amniotic membrane and other birth tissues. Pl.'s Original Pet[1] ("Pet."), ECF No. 1-5 at ¶ 11. Legacy markets its products to doctors all over the country. *Id.* ¶ 11. Legacy is a Texas limited partnership with its principal place of business in Fort Worth, Texas. *Id.* ¶ 4.

Ching is an individual with his principal place of residence in Arizona. *Id.* ¶ 5. On or about November 7, 2023, Ching, doing business as H3 Medical Clinic, LLC, entered into a Purchase Agreement (the "Agreement") with Legacy. Exhibit 1, Bini Decl. ¶ 5; Pet. ¶ 14; Pet. Ex. A. Per the terms of the Agreement, Legacy agreed to sell, and Ching agreed to purchase, human cell and tissue products (the "Product(s)"). Pet. ¶ 16, Ex. A. Ching would then administer these Products to patients as medically necessary. Pet. ¶ 16, Ex. B ¶ 4; Ex. 1 ¶ 9. The Agreement required Ching to remit payment to Legacy's Texas bank account within sixty (60) days after Product shipment, and all payments were to be made in Texas. Pet. ¶ 23.

### B. The Texas Contacts

Ching began placing orders on or around January 18, 2024. Ex. 1 ¶ 14. Over the course of the next three and a half months, Ching purchased approximately ***$4,147,972.92*** worth of human Products from Legacy. *Id.* Each of these transactions was initiated by Ching, who repeatedly and purposefully reached into Texas to conduct business with Legacy. After Ching submitted his order forms for these Products, Legacy's employees in Fort Worth, Texas, generated order statements reflecting the terms of each purchase. Pet. ¶ 17; Ex. 1 ¶ 10. Legacy promptly processed, packed, and shipped the Products identified on the order statement for delivery to Ching in Arizona using

---

[1] Plaintiff's Original Petition can be found in Defendant's Notice of Removal, ECF No. 1-5.

3

second-day delivery. Pet. ¶ 18, Ex. B ¶ 5; Ex. 1 ¶ 11. Legacy would also provide the shipment's delivery status information to Ching. Pet. ¶ 19. On the day that Products were shipped, Legacy sent Ching an invoice per order via email. *Id.* ¶ 20. At the end of each month, Legacy delivered an email to Ching with a summary PDF document containing all of the prior month's invoices, which reflected all amounts Ching owed Legacy for Products ordered in the preceding month. *Id.* ¶ 21. All invoices, monthly summaries, and order communications originated from Legacy's Texas headquarters and were sent to Ching in Arizona, further evidencing the Texas-centered nature of the parties' relationship. Ex. 1 ¶ 13. Upon receipt of each invoice, Ching was required to timely remit payment to Legacy's Texas bank account. *Id.*

The Agreement expressly provides that Texas law governs the parties' relationship, and Legacy executed the Agreement in Fort Worth, Texas. Ex. 1 ¶¶ 6–7. Ching had the option to purchase similar products from other vendors but instead chose to contract with Legacy, a Texas-based entity, thereby purposefully availing himself of the benefits and protections of Texas law and the Texas marketplace. *See* Ex. 1 ¶ 16.

Pursuant to the terms of the Agreement, Ching was bound to make payment to Legacy in the amount specified on his monthly invoices for all Products he received. Pet. ¶ 22. Yet of the $4,147,972.92 worth of Products he purchased, Ching only made about $631,835 in payments, Ex. 1 ¶ 14. He also returned about $202,340.16 worth of Products by shipping them back to Legacy in Texas for credit. *Id.* Despite repeated demands, Ching has failed to pay the remaining $3,313,798.60 owed to Legacy, which corresponds to at least twenty-eight separate invoices for Products purchased between about January 18, 2024 and April 1, 2024. Pet. ¶¶ 27–28; Ex. 1 ¶ 14. As a result, Ching's account remains delinquent in that amount, causing direct and substantial harm to Legacy in Texas. *See* Ex. 1 ¶¶ 14–15.

4

### C. Procedural History

Legacy initiated this action by filing suit against Ching in the 17th Judicial District Court of Tarrant County, Texas on June 30, 2025. *See generally* Pet. Legacy's claims include breach of contract, and, in the alternative, quantum meruit, promissory estoppel, and unjust enrichment, all arising from Ching's failure to pay for Products supplied under the Agreement. *Id.*

Ching exercised his right of removal and transferred the case to this Court pursuant to 28 U.S.C. § 1441(a). *See* Def.'s Notice of Removal ("Notice"), ECF No. 1. After removal, Ching responded by filing a Motion to Dismiss the complaint for lack of personal jurisdiction.

### III. ARGUMENT

#### A. This Court May Exercise Personal Jurisdiction Over Ching

A federal district court may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits it, and the exercise of jurisdiction is consistent with due process. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). The Texas long-arm statute extends to the limits of the Federal Constitution, so the analysis focuses on whether Ching has sufficient minimum contacts with Texas and whether the exercise of jurisdiction would be fair and reasonable. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

Due Process, in turn, requires that the defendant have "minimum contacts with the forum state such that the defendant purposefully availed himself of the privilege of conducting activities and business in the forum state." *Bluestone Partners, LLC v. Lifecycle Constr. Servs., LLC*, 642 F. Supp. 3d 560, 564 (E.D. Tex. 2022). The Fourteenth Amendment minimum contacts analysis "allows a court to assert personal jurisdiction over defendants that have meaningful 'contacts, ties, or relations' with the forum state." *Stroman Realty, Inc.*, 528 F.3d at 385 (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 319 (1945)). Such contacts can give rise to either general or specific jurisdiction. *Id.* General jurisdiction exists when a defendant's contacts with the forum state are substantial and continuous, even if unrelated to the cause of action. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003). Specific jurisdiction, on the other hand, may exist where the "controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Here, the only issue in dispute is whether the Court has specific personal jurisdiction over Ching, and the record overwhelmingly supports that it does.[2]

Courts apply a three-step test to determine whether a court can exercise specific jurisdiction. *Seiferth v. Helicopteros Atuneros, Inc.*, 274 F.3d 266, 271 (5th Cir. 2006). First, the defendant must have had minimum contact with the forum state, meaning that the defendant purposefully directed his activities at the forum state and purposefully availed himself of the privilege of conducting business in the forum state. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). Second, the plaintiff's cause of action must have arisen out of the defendant's contacts with the forum state. *Id.* And third, the exercise of personal jurisdiction must not be unfair or unreasonable. *Id.*

The Supreme Court and Fifth Circuit have repeatedly emphasized that the "minimum contacts" analysis is a "highly realistic" and fact-specific inquiry, considering the parties' prior negotiations, the terms of the contract, the contemplated future consequences, and the parties' actual course of dealing. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020). Moreover, the "arise

---

[2] Although Ching raises certain argument regarding general jurisdiction, *see* Def. Mot. to Dismiss ("Mot.") at 3-4, ECF No. 5. Legacy has never contended that this Court can exercise general jurisdiction over either Ching or H3 Medical Clinic, LLC, who are both residents of Arizona.

out of or relate to" standard is satisfied where, as here, the claims are directly connected to the defendant's forum-directed conduct. See *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021).

As discussed in more detail below, Ching's relationship with Legacy plainly satisfies all three of these requirements and, as a result, this Court can maintain specific personal jurisdiction over Ching.

### 1. Ching had sufficient minimum contacts with Texas to satisfy personal jurisdiction

Under the first prong of the specific jurisdiction test, Courts will find purposeful availment where the contacts with the forum state result from the defendant's actions that create a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "In breach-of-contract disputes the [minimum contacts] analysis turns on a 'highly realistic' assessment of the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King*, 471 U.S. at 479) (alteration in original). Courts will give "weighty consideration" to the place where the contract is performed. *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992). Furthermore, courts will also treat the law governing the contract as a relevant factor in determining whether there was purposeful availment. *See id.*; *Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149, 152 (5th Cir. 1980).

Here, the record demonstrates that Ching's contacts with Texas were not random, isolated, or fortuitous; rather, they were the result of his deliberate and repeated business decisions to enter into a substantial, ongoing contractual relationship with a Texas company, governed by Texas law, and requiring performance in Texas. He voluntarily and affirmatively entered into a contract with

Legacy, a Texas entity domiciled in Fort Worth, Texas, and agreed that Texas law would govern the same. Pet. ¶ 8, Ex. A ¶ 7; Ex. 1 ¶ 7. The Agreement required Ching to remit payment to Texas, and the injury from his nonpayment was suffered by Legacy in Texas. *See* Ex. 1 ¶ 13. Ching's course of dealing with Legacy was extensive and continuous: over the course of several months, he placed at least twenty-eight high-value orders totaling $4,147,972.92, each of which required Legacy's Texas-based personnel to process, pack, and ship proprietary medical products from Fort Worth, Texas. *Id.* ¶¶ 11, 14. Legacy executed the Agreement in Texas, and all of Legacy's performance—including order processing, Product packing, and shipment—occurred in Texas. *Id.* ¶¶ 6–13. The Products were all stored in and dispatched from Legacy's Fort Worth facility based on Ching's specific orders. *Id.* There was no unilateral decision by Legacy to ship the Products; rather, each shipment was made at Ching's express request and authorization, further evidencing his purposeful availment of the Texas forum. *See id.* Ching had the option to take his business elsewhere and avoid contract performance in Texas but chose not to.

      Ching argues that merely entering into a contract is not enough for personal jurisdiction. Mot. at 6, ECF No. 5. However, the law is clear that a defendant need not have physically entered or been present in Texas for this Court to exercise jurisdiction. *See Burger King*, 471 U.S. at 476. It is the reality of contemporary business transactions that "a substantial amount of business" will be "transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* Moreover, as this Court has recently recognized, "[a]lthough simply contracting with a Texas company is not enough to confer minimum contacts, the terms of the contract and the parties' course of dealing, negotiations, contemplated future consequences, and a choice of law clause are all considered. ***Even a 'single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to***

8

***the claim asserted.****"* Ex. 4 (emphasis added) (first citing *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223–24 (5th Cir. 2012), and then quoting *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

Legacy relies on far more than the mere existence of a contract to establish personal jurisdiction. The contractual terms included a Texas choice-of-law provision that Ching voluntarily signed and assented to. Pet. Ex. A ¶ 7; Ex. 1 ¶ 7. Legacy's Texas-based employees fulfilled every aspect of the contract in Texas, including processing and shipping more than $4,147,972.92 worth of product to Ching. Ex. 1 ¶¶ 10–14. Ching likewise specifically shipped and returned $202,340.16 worth of Product back to Legacy, thereby actively sending Product into Texas. *Id.* ¶ 14. Ching and/or other H3 employees communicated directly and repeatedly with Legacy's Texas employees throughout the life of the contract. *Id.* ¶ 8. And Ching knew he had contractual obligations to send money to Legacy's Texas bank account. *Id.* ¶ 13.

Both the 17th Judicial District Court of Tarrant County, Texas and the United District Court for the Northern District of Texas, Fort Worth Division have found personal jurisdiction over defendants in virtually identical contract disputes with Legacy, where the defendants entered into repeated transactions with Legacy, agreed to a Texas choice of law clause, and remitted payment to Legacy in Texas, as Ching did here. *See* Exhibit 2 , Order Overruling Def.'s Special Appearance; Exhibit 3, Order Denying Motion to Dismiss or Transfer; Exhibit 4, Order Denying Defendant's Motion to Dismiss and Brief in Support. Specifically, the 17th Judicial District Court of Tarrant County found that the defendant in that case "at a minimum, entered into repeated transactions with [Legacy] under the contract over an extended period of time, and remitted payment to [Legacy]'s Texas bank account." Ex. 2 Furthermore, the "[d]efendant voluntarily entered into the contract and agreed that Texas law would govern the same." *Id.* The defendant

9

"had the option to purchase the contracted goods from other vendors but chose to contract with [Legacy], thereby invoking and relying upon Texas law." *Id.* Because of these reasons, the court found that "[Legacy] has alleged and shown [the defendant]'s sufficient minimum contacts with, and purposeful availment of, Texas." *Id.*

In *Legacy Medical Consultants, LP v. Charles*, this Court likewise found that it could exercise personal jurisdiction over a similarly situated Arizona defendant in a similar contract dispute involving Legacy. In addressing the minimum contacts prong of the personal jurisdiction test, this Court held that "the entire purpose of the parties' contract was for Defendant to purchase proprietary medical products from a Texas based company." Ex. 4 at 9. The Court further found that "Texas was the hub of the parties' activity," and that "Defendant's contact with Texas came about not only from 'the fortuity of Plaintiff's residence' here, but because Defendant sought out a Texas based company." *Id.* After considering and balancing all of the relevant factors, this Court found that Legacy had "made a prima facie showing of minimum contacts to support a finding of specific personal jurisdiction over Defendant." *Id.*

Ching cites to *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) for the proposition that a "combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum state are insufficient" to establish personal jurisdiction over a defendant. Mot. at 6. But, unlike in *Freudensprung,* Legacy relies on the fact that the contract was performed in Texas, that the products were shipped from and returned to Texas, and that the contract was governed by Texas law. Legacy packaged and shipped the products from Texas and made payments to Legacy's account in Texas. Ching also performed part of the contract in Texas by shipping the Products back to Legacy in Texas to obtain

10

credit. *Freudensprung* is also distinguishable because the plaintiff in *Freudensprung* was not even a party to the contract that the plaintiff cited to as the basis for personal jurisdiction of Texas courts over the defendant. *See Freudensprung*, 379 F.3d at 344. Here, Legacy is a party to the contract with Ching that forms the basis of personal jurisdiction, and the contract was governed by Texas law and performed in Texas. Additionally, the contract in *Freudensprung* was governed by English law and the material portions of the contract were to be performed in West Africa, not in Texas. *Id.* at 345. Here, the contract is governed by Texas law and the material portions of the contract were performed by Legacy in Texas.

Ching also cites *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) for a similar purpose. In *Harvey*, the plaintiff sought specific jurisdiction in Texas over the defendant on the basis of the defendant's contract with a Texas entity, the defendant's communications and sending documents to Texas, and the defendant's payments into Texas. *Id.* The court found that these factors were insufficient to establish personal jurisdiction. *Id.* However, *Harvey* is readily distinguishable because the contract had a provision stating that Oklahoma law would govern and because the "performance of the contract was centered in Oklahoma rather than Texas." *Id.* In contrast, here the contract had a Texas choice of law provision and the performance was centered in Texas.

Ching cites *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) for the proposition that Legacy's "unilateral activity" and Ching's contract with a Texas entity cannot be the basis of specific personal jurisdiction. However, *Spademan* is distinguishable: it did not have an explicit Texas choice of law provision, did not involve the ongoing manufacturing and shipment of products in Texas, and the contract's performance was not focused in Texas. *See id.* at 1188.

Ching relies on *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)

11

for the proposition that merely contracting with a Texas resident is insufficient for personal jurisdiction. However, as stated above, Legacy relies on far more than the mere existence of a contract between it and Ching. Additionally, as this Court noted, *Moncrief* is not instructive in the present case because the "dispute in *Moncrief* centered around a Texas corporation and Russian corporations engaged in a joint venture to develop a Russian gas field where one of the agreements provided for arbitration in Russia under Russian law." *See* Ex. 4 at 8. In contrast, here the defendant agreed to be bound by Texas law, and it should have been evident to Ching that his performance would cause business activity in Texas. *See id.*

### 2. Legacy's cause of action arose out of Ching's contacts with Texas

Legacy also easily satisfies the second prong of the specific personal jurisdiction test because its claims arise directly from Ching's purposeful and repeated contacts with Texas: specifically, the contract he entered into with a Texas entity, the packaging and shipment of Products from Texas, the preparing and sending of invoices from Texas, and the requirement to remit payment to a Texas bank accounts. This litigation is thus directly related to Ching's purposeful activities in Texas. For a forum to have specific personal jurisdiction over a defendant, the suit must "arise out of or relate to" the defendant's contacts with the forum state. *Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F. Supp. 3d 606, 614 (N.D. Tex. 2022) (alterations omitted). Here, but for Ching's Texas-directed conduct—including his repeated orders, acceptance of shipments, and failure to pay a Texas company—Legacy's claims would not exist. *See id.* Namely, the contract he signed with a Texas entity, which contained a Texas choice-of-law provision, and the shipment of products from Texas, which he accepted. Pet. Ex. A; Ex. 1. The direct causal link between Ching's forum contacts and Legacy's claims further underscores the propriety of exercising jurisdiction.

### 3. This Court's exercise of personal jurisdiction would not be unfair or unreasonable

Finally, Ching has not argued, let alone shown, that the exercise of personal jurisdiction would be unfair or unreasonable under the third prong of the specific personal jurisdiction test. In evaluating whether the exercise of personal jurisdiction would be fair and reasonable, courts consider the following factors:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 221 (5th Cir. 2020) (citing *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018)).

Ching bears the burden of making a "compelling case" that the assertion of jurisdiction is unfair and unreasonable. *See id.*; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ("Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."). It is "rare to say the assertion is unfair after minimum contacts have been shown." *Brandt*, 195 F.3d at 215. Furthermore, "[t]he burdens imposed by travel to and from a forum are not enough, standing alone, to make the exercise of specific jurisdiction unreasonable," especially where the defendant purposefully availed himself of the forum. *CSFB 1998-C2 TX Facilities, LLC v. Rector*, No. 3:14-CV-4142, 2015 WL 1003045 at *6 (N.D. Tex. Mar. 5, 2015)

Here, Ching has failed to argue *at all* why the exercise of personal jurisdiction would be unfair or unreasonable and thus fails to meet his burden. *See generally* Mot. Ching benefitted from his business relationship with Legacy by using Legacy's innovative products to treat his patients

and, by his own removal of this case to a federal court in Texas, has already demonstrated that defending in this forum is not unduly burdensome. Because Ching has minimum contacts with Texas, "the interests of the forum and the plaintiff justify even large burdens on the defendant." *See Brandt*, 195 F.3d at 215. Texas has a substantial interest in ensuring that contracts entered into by its residents are enforced and in protecting Texas business from out-of-state actors who fail to perform. *See Laughlin Energy Motor Sports, LLC v. Americana Pro Detailing Prods. LLC*, No. 4:22-CV-00876-P, 2023 WL 1805870 at *3 (N.D. Tex. Feb. 7, 2023). Legacy, a resident of Tarrant County, also has an interest in "maintaining one convenient and effective lawsuit in its place of domicile." *See id.* The interstate judicial system's interest in the efficient resolution of controversies is also best served by litigating in Texas, where the witnesses, documents, and locus of performance are located. Accordingly, the exercise of personal jurisdiction over Ching is not unfair or unreasonable.

Texas has a strong interest in protecting its residents and businesses from out-of-state actors who enter into substantial contracts with Texas entities and then fail to perform. Requiring Legacy to litigate in Arizona would be fundamentally unfair, as all of Legacy's performance and the resulting harm occurred in Texas, and would undermine the very protections Texas law is designed to provide.

In sum, the Fifth Circuit's three-step test for specific jurisdiction is satisfied here: (1) Ching purposefully directed his activities at Texas by entering into a contract with a Texas entity, with all material aspects performed in Texas over three and a half months; (2) Legacy's claims arise directly from this Texas-based contact, including the contracts, shipments, and non-payment; and (3) the exercise of jurisdiction is neither unfair nor unreasonable, as Texas has a strong interest in enforcing contracts involving its citizens, and Ching has not shown that litigating in Texas would

impose an undue burden.

While Legacy maintains that this Court has jurisdiction over Ching in this matter, should the Court find that the current record is insufficient to resolve the issue of personal jurisdiction, Legacy respectfully requests additional time to conduct limited, targeted discovery from Ching regarding his contacts with Texas. This is a well-established practice when there are jurisdictional issues. *See Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)

### IV.   CONCLUSION

For the foregoing reasons, this Court should deny Ching's Motion to Dismiss in its entirety and permit this case to proceed on the merits in the forum where the harm was suffered and the business relationship was centered—Texas. In the alternative, if this Court determines that the current record is insufficient to resolve the issue of personal jurisdiction, Legacy respectfully requests that the Court grant limited, targeted jurisdictional discovery to further develop the facts regarding Ching's purposeful contacts with Texas.

| | |
|---|---|
| Dated: September 24, 2025. | Respectfully submitted,<br><br>**BLANK ROME LLP**<br><br>*/s/ Megan Altobelli*<br>Audrey F. Momanaee<br>Federal Bar No. 724132<br>Texas Bar No. 24055993<br>Gregory J. Moore (admitted *pro hac vice*)<br>Texas Bar No. 24055999<br>717 Texas Avenue, Suite 1400<br>Houston, TX 77002<br>(713) 632-8613<br>Audrey.Momanaee@BlankRome.com<br>Gregory.Moore@BlankRome.com<br><br>-and-<br><br>Megan A. Altobelli (local counsel)<br>Texas Bar No. 24107116<br>200 Crescent Court, Suite 1000<br>Dallas, Texas 75201<br>(972) 850-1467 M. Altobelli Direct<br>Megan.Altobelli@BlankRome.com<br><br>**ATTORNEYS FOR PLAINTIFF** |

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which sends notification to all parties of record.

By: */s/ Megan Altobelli*
    Megan Altobelli

16