IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP  <br><br>Plaintiff,  <br><br>v.  <br><br>CARLOS CHING  <br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:25-CV-00874-O |

### ORDER

Before the Court are Defendant's Motion to Dismiss for Lack of Jurisdiction and Brief in Support (ECF No. 5) filed August 20, 2025; Plaintiff's Response (ECF No. 16) filed September 24, 2025; and Defendant's Reply (ECF No. 17) filed October 15, 2025. After considering the briefing and relevant case law, the Court determines that Defendant's Motion to Dismiss should be **DENIED**.

I.   **BACKGROUND**[1]

This suit arises from unpaid invoices. In late 2023, Defendant, Carlos Ching, d/b/a H3 Medical Clinic, LLC, contracted with Plaintiff, Legacy Medical Consultants, LP, for the sale of human cell and tissue products used to treat chronic, non-healing wounds. Plaintiff is a Texas limited partnership, and Defendant is a citizen of Arizona.

Since January 2024, Defendant placed twenty-eight orders for Legacy's human tissue product with invoices totaling $3,313,798.60. With each order, Plaintiff would email Defendant

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Original Petition. *See* Notice of Removal (Pl.'s Pet.), ECF No. 1-5. At this stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

an invoice. Payment for each invoice was due 60 days after the product shipped, per the parties' contract. Yet, Plaintiff has not received twenty-eight payments for Defendant's orders.

Plaintiff brought this action against Defendant in Texas state court seeking damages for the unpaid invoices by alleging a breach of contract claim, among others. Defendant then removed the case (ECF No. 1) and now moves to dismiss Plaintiff's complaint for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2). The Motion to Dismiss is now ripe for review.[2]

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(2) – Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of proof is on the plaintiff as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546.

"A federal district court sitting in diversity may exercise personal jurisdiction over a [nonresident] defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (internal citation omitted). "Because Texas's long-arm statute reaches to the constitutional

---

[2] Def.'s Mot. Dismiss, ECF No. 5.

limits, the question [a federal court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a nonresident defendant purposefully avails herself of the benefits of the forum state, so that she "'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction can be specific or general. *Clemens*, 615 F.3d at 378. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (alteration in original) (internal quotation marks and citations omitted). Specific personal jurisdiction requires that a party "purposefully directed its activities at the forum state" and the Court has jurisdiction over claims "deriving from, or connected with" those activities. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

### III.   ANALYSIS

#### A.  Rule 12(b)(2) – Personal Jurisdiction

In this case, neither party alleges that Defendant is subject to general jurisdiction in Texas.[3] Thus the dispute is whether the Court may exercise specific personal jurisdiction over this matter. The Fifth Circuit employs a three-step test in analyzing specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) (citation omitted).

1. <u>Minimum Contacts with Texas</u>

Defendant argues that he lacks minimum contacts with Texas because he is an Arizona resident and has no connections to Texas apart from his dealings with Plaintiff.[4] Plaintiff argues that because Defendant voluntarily contracted with a Texas company, agreed to be bound by Texas law, and placed twenty-eight high value orders for which he refuses to pay, he should be subject to this Court's jurisdiction.[5] Plaintiff is correct.

The Supreme Court and Fifth Circuit have long recognized that "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create . . . obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 375 (5th Cir. 2003) (quoting *Burger King Corp.*, 471 U.S. at 473 (1985)). Although simply contracting with a Texas company is not enough to confer minimum contacts, the terms of the contract and the

---

[3] Def.'s Mot. Dismiss 3–4, ECF No. 5; Pl.'s Resp. 7, ECF No. 16.
[4] Def.'s Mot. Dismiss 5–9, ECF No. 5.
[5] Pl.'s Resp. 7–14, ECF No. 16.

parties' course of dealing, negotiations, contemplated future consequences, and a choice of law clause are all considered. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223–24 (5th Cir. 2012). Even a "single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Here, Defendant purposefully reached out beyond Arizona to enter into a substantial business agreement with Plaintiff, a Texas company.[6] Defendant signed a purchase agreement, which clearly designates that Texas law applies.[7] And after signing the purchase agreement, Defendant placed at least twenty-eight separate orders, all of which were fulfilled in Texas, for products totaling over $4,147,972.92.[8] Defendant then failed to remit payment for $3,313,798.60 worth of product.[9] Defendant has not been haled into this Court "solely as a result of random, fortuitous, or attenuated contacts." *Clemens*, 615 F.3d at 379 (quoting *Burger King Corp.*, 471 U.S. at 475). But rather he finds himself here based on his decision to do business with a Texas company and then not pay that company for the goods he ordered. A "nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003).

Defendant relies on *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) and *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) to support his claim that jurisdiction is improper, but neither case is instructive here.[10] The dispute in *Moncrief* centered around a Texas

---

[6] Pl.'s Resp. 7–8, ECF No. 16.
[7] *Id*.
[8] *Id*. at 8.
[9] Pl.'s App. Supp. Resp. Ex. 1 (Declaration of Kimberly R. Bini) App. 3, ECF No. 16-1.
[10] Def.'s Mot. Dismiss 6–7, ECF No. 5.

corporation and Russian corporations engaged in a joint venture to develop a Russian gas field. One of the agreements provided for arbitration in Russia under Russian law. The plaintiff filed suit in Texas, and the district court concluded that specific jurisdiction did not exist. In affirming, the Fifth Circuit explained, "[Plaintiff's] Texas location was irrelevant." 481 F.3d at 313. "The [parties'] contract was silent as to location. Given the nature of the work, there's no indication that the location of the performance mattered, and it is not clear how performance of that work would 'cause business activity.'" *Moncrief Oil Intern. Inc.*, 481 F.3d at 313. After pointing out that the plaintiff had built an office specifically for the project in Russia, negotiated and prepared key elements in Russia, and agreed to be bound by Russian law, the court concluded that the defendants had not directed activities at Texas sufficient to support being haled into a Texas court. *Id.*

But here, Plaintiff agreed to be bound by Texas law. And although it may have been irrelevant initially to Defendant that Plaintiff is Texas company, once he knew it was a Texas company, he continued to engage with, order product from, and ultimately not pay a Texas company. Moreover, it should have been evident to Defendant that both his performance and Plaintiff's performance would cause business activity in Texas. These facts are quite different from *Moncrief*.

*McFadin* is similarly unpersuasive to the facts herein. In *McFadin*, the plaintiffs a Colorado-based sales representative in Texas regarding an agreement, initiated by the plaintiffs, to sell leather goods made in Texas outside of Texas. In affirming the district court's determination that it lacked specific jurisdiction, the Fifth Circuit reasoned that (1) the "entire purpose of the agreement was to open up markets outside of Texas[;]" (2) "Denver was the hub of activities[;]" and (3) "[t]he little contact with Texas came only from the fortuity of the plaintiffs' residence there." 587 F.3d at 760–61. Again, these facts are quite different that the facts here.

In this case, the entire purpose of the parties' contract was for Defendant to purchase proprietary medical products from a Texas based company. And Texas was the hub of the parties' activity. Moreover, Defendant's contact with Texas came about not only from "the fortuity of Plaintiff's residence" but because Defendant sought out a Texas based company.

After balancing the relevant factors, the Court concludes that Plaintiff has made a prima facie showing of minimum contacts to support a finding of specific personal jurisdiction over Defendant.

### 2. Plaintiff's Claims and Defendant's Texas Contacts

The Court looks next to whether the Plaintiff's claims arise out of or result from Defendant's contacts with Texas. A court may exercise specific jurisdiction over a nonresident defendant only when a "sufficient nexus" exists "between the [defendant]'s contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378–79 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). At this juncture, the "'central concern' of specific jurisdiction zooms into focus—'the relationship among the defendant, the forum, and the litigation.'" *In re Toyota Hybrid Brake Litig.*, Consolidated Case No. 4:20-cv-127, 2021 WL 2805455, at *12 (E.D. Tex. 2021) ((quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Although Defendant disputes that Texas is the proper forum, neither party disputes that Plaintiff's claims arise from Defendant's interaction with Plaintiff.[11] The only reason this case is before the Court is because Defendant contacted Plaintiff in Texas to purchase products and has subsequently refused to pay for those products. Accordingly, the Court finds that Plaintiff's claims arise out of or result from Defendant's contacts with Texas.

### 3. Personal Jurisdiction Fair and Reasonable

---

[11] Pl.'s Resp. 3–4, ECF No. 16; *see generally* Def.'s Mot. Dismiss, ECF No. 5.

Once minimum contacts are established, the burden shifts to the defendant to show how the assertion of jurisdiction would be unfair. *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 477 (1985)). To determine this, the Court evaluates five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006).

Defendant has failed to raise a compelling argument showing how jurisdiction would be unfair. Even though the burden on Defendant litigating in Texas is weighty, Texas's interest in protecting one of its companies from nonpayment and Plaintiff's interest in recovering for invoices outstanding for over a year weighs in favor of exercising jurisdiction. And, because the parties agreed to apply Texas law, and no other forum has been shown more suitable, adjudicating this case in Texas federal court where it is already pending weighs in favor of exercising jurisdiction to allow for an efficient resolution to this controversy.

Accordingly, the Court finds that is has specific jurisdiction over Defendant. Defendant's Motion to Dismiss under 12(b)(2) is **DENIED**.

## IV. CONCLUSION

Because the Court has personal jurisdiction over Defendant, Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED** on this **20th day** of **November 2025**.

_Reed O'Connor_
**CHIEF UNITED STATES DISTRICT JUDGE**