IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00874-O |
| | § | |
| CARLOS CHING D/B/A H3 MEDICAL | § | |
| CLINIC, LLC, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................iii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

LEGAL STANDARDS........................................................................................6

ARGUMENT ....................................................................................................8

I.    Good cause does not exist to allow Legacy's amendment under Rule 16(b)(4) ........8

   A. Legacy cannot justify its failure to timely move to amend by insisting it
      only recently learned Groff signed the Agreement as H3's agent......................8

      i.    Before it filed this lawsuit, Legacy knew Groff signed the
            Agreement on behalf of H3 and not on behalf of Ching.........................8

      ii.   Even if Legacy did not know before filing this lawsuit that
            Groff signed the Agreement as H3's agent, Legacy learned the
            truth months ago ....................................................................12

      iii.  Legacy cannot justify its failure to timely move to amend simply
            because the parties were exploring settlement.........................................17

   B. Legacy's proposed amendment is unimportant because it is futile....................18

II.   Legacy is not entitled to amend under Rule 15(a)(2)..................................22

PRAYER ........................................................................................................23

CERTIFICATE OF SERVICE ..............................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ............................................................................................ 21

*J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*, No. 3:10-CV-02489-BF, 2012 WL 4512500 (N.D. Tex. Oct. 2, 2012) ................................................................ 21

*J.B. Int'l, LLC v. William Noble Rare Jewels, L.P.*, No. 3:22-CV-1422-K, 2023 WL 7190642 (N.D. Tex. Nov. 1, 2023) ........................................................................... 21

*Latch v. Gratty, Inc.*, 107 S.W.3d 543 (Tex. 2003) ...................................................... 20

*Legacy Medical Consultants, LP v. Foot & Ankle Doctors, Inc., et al.*, No. 4:25-cv-00941-O (N.D. Tex. Feb. 3, 2026) ................................................................. 20

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ................... 19

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368 (5th Cir. 2014) ............................................................................................................... 23

*Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161 (5th Cir. 2010) .................................. 7

*Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443 (Tex. App.—Austin 2023) ............................ 21

*Robertson v. Bland*, 517 S.W.2d 676 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ dism'd) ..................................................................................................... 21

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533 (5th Cir. 2003) ................. 7, 8

*Sasoro 13, LLC v. 7-Eleven, Inc.*, No. 3:18-CV-03274-N, 2023 WL 2290788 (N.D. Tex. Feb. 27, 2023) ................................................................................................ 19

*Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802 (N.D. Tex. 2009) ...................................... 7

*Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298 (Tex. App.—Dallas 1992, writ denied) ....................................................................................................... 20

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ........................................................... 7, 22

*Wilson v. Birnberg*, 569 F. App'x 343 (5th Cir. 2014) .................................................... 19

*Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196 (Tex. App.—
Dallas 2011, no pet.) .................................................................................................. 20

**Statutes**

Fed. R. Civ. P. 15 ........................................................................................................... 7

Fed. R. Civ. P. 16 ........................................................................................................... 6

**Treatises**

6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed.
1990) ............................................................................................................................ 7

Restatement (Second) of Agency § 320 (Am. L. Inst. 1958) ...................................... 21

COMES NOW Defendant Carlos Ching d/b/a H3 Medical Clinic, LLC ("Ching") and files this his Response to the Motion for Leave to File First Amended Complaint [ECF 28] ("Motion") and the brief in support thereof [ECF 29] ("Brief"), both filed by Plaintiff Legacy Medical Consultants, LP ("Legacy").  Ching respectfully shows the Court as follows:

## INTRODUCTION

The Court should make quick work of Legacy's untimely motion for leave to join a former administrative-level employee as a defendant in this case.  Legacy does not—and cannot—carry its burden to show good cause exists to allow its amendment for at least two main reasons.

First, Legacy cannot justify its delay in seeking the amendment over three months after the deadline for seeking leave to amend pleadings and join third parties. The proposed defendant John Groff ("Groff") disclosed that he was signing the agreement at issue on behalf of his employer, H3 Medical Clinic, LLC ("H3"), at the time the Agreement was executed—well before suit was ever filed.  Groff filled out a Customer Onboarding Document contemporaneously with the Agreement, which contained this information.  And Legacy knew that Groff was signing as a representative of H3, as can be seen in the invoices that Legacy sent to H3, Legacy naming H3 as the recipient on the containers by which it shipped the products at issue, correspondence that Legacy addressed to H3, and numerous other documents.  And even after suit was filed, Ching served his Initial Disclosures in September 2025 identifying Groff as an individual with knowledge of "the contract on which Plaintiff's claims are based, which Mr. Groff signed on behalf of H3 Medical Clinic, LLC"—thereby making plain Ching's position in the case. (emphasis added).

Second, for many of these same reasons, Legacy's proposed amendments are futile and would fail to state a claim against Groff.  Legacy cannot overcome the evidence showing that it knew it was dealing with H3 and that Groff therefore signed the agreement on behalf of H3.  And

this Court has already rejected Legacy's argument in another case that individuals signing under the "customer" line of Legacy's form agreements were doing so in their individual capacities. *See* Order, *Legacy Medical Consultants, LP v. Foot & Ankle Doctors, Inc., et al.*, No. 4:25-cv-00941-O (N.D. Tex. Feb. 3, 2026), ECF 19 at 11-12 (dismissing Legacy's claims against individual employees of medical practice who, according to Legacy, signed an agreement without disclosing they were doing so as agents of the medical practice).

Legacy knows that Groff did not sign the Agreement on his own behalf and that he did not fail disclose the principal. As Legacy is well aware, Groff is not a doctor, nurse, or other provider, and he has no medical practice or business in which he could even use the skin graft products that he is now alleged to have purchased. Legacy reveals its true motive for seeking to join Groff to this lawsuit in footnote 2 of its Motion, where it explains its view that "H3 is likely defunct" and "Ching himself may not have sufficient funds to repay Legacy." ECF 29 at 5 n.2. This is just a search for additional pockets.

For the reasons below, the Court should not permit Groff to be hauled into this lawsuit simply because he signed an agreement in a representative capacity as part of his job with his former employer. Legacy's Motion should be denied.

## BACKGROUND

Legacy is a seller of medical products. [*See* ECF 29 at 1]. Ching is a nurse practitioner, and H3 Medical Clinic, LLC ("H3") is a medical practice owned and operated by Ching. At all times relevant to this brief, Groff was a salaried employee of H3. *See* Ex. 1 at APP. 001 ¶ 2. While employed by H3, Groff served in a purely administrative role; he was not—and has never been— a medical provider. *See id.* at APP. 001-002 ¶¶ 2, 4. Groff has never been an owner of H3. *See*

*id.* at APP. 001 ¶ 2.  As part of Groff's job at H3, he routinely executed contracts on H3's behalf. *See id.*

On or about November 7, 2023, Groff executed, on behalf of H3, an agreement for the purchase of certain medical products from Legacy (the "Agreement").  *See id.* at APP. 001 ¶ 3; Ex. 1-A at APP. 005-007 (Agreement).  The Agreement was a form drafted by Legacy with blanks that could be filled in.  *See* Ex. 1 at APP. 001 ¶ 3; Ex. 1-A at APP. 005.  The Agreement had a blank for the "provider" name (i.e., Ching) but no blank for the "practice" name (i.e., H3).  *See* Ex. 1-A at APP. 005.  Thus, when Groff executed the Agreement, he saw no space in the form for the entry of H3's name.  *See* Ex. 1 at APP. 001 ¶ 3.

In addition to the Agreement, Legacy required new customers to execute a Customer Onboarding Document, another form drafted by Legacy.  *See id.*; Ex. 1-A at APP. 004 (Onboarding Document).   Groff filled out the Customer Onboarding Document simultaneously with his execution of the Agreement and submitted the two documents to Legacy together.  *See* Ex. 1 at APP. 001 ¶ 3.  The Customer Onboarding Document featured blanks for both "provider name," which Groff filled with Ching's name, and "practice name," which Groff filled with H3's name. *See* Ex. 1-A at APP. 004.  The Customer Onboarding Document featured blanks for the customer's contact information, which Groff filled with his contact information and that of another H3 employee, Logan Walker, including Groff's and Walker's "H3MedicalClinic.com" email addresses.  *See id.*  And in the blank for "Tax ID #," Groff provided H3's IRS-issued Employer Identification Number ("EIN"), not Ching's social security number or any other identification number assigned to Ching in his individual capacity.  *See* Ex. 1 at APP. 001 ¶ 3.

From that point on, Legacy correctly treated H3, not Ching, as the customer with whom it had contracted.  When Legacy shipped products purchased under the Agreement, it did so in

containers addressed to H3, not Ching. *See* Ex. 1 at APP. 002 ¶ 5. When Legacy generated invoices for amounts due under the Agreement, it addressed the invoices to H3, merely with attention to Ching:

| Bill To: |
| --- |
| H3 Medical Clinic<br>ATTN: Carlos Ching<br>1520 W Sunrise Dr<br>Phoenix, Arizona 85041<br>United States Of America |

*See, e.g.,* Ex. 1-B at APP. 008. And those invoices also show that Legacy shipped the products purchased under the Agreement to H3, again merely with attention to Ching:

| Ship To: |
| --- |
| H3 Medical Clinic<br>ATTN: Carlos Ching<br>1520 W Sunrise Dr<br>Phoenix, Arizona 85041<br>United States Of America |

*See, e.g., id.*

Legacy also sent emails indicating that it understood that H3, not Ching, was the customer under the Agreement. In a February 2024 email to a third party, Legacy's Director of National Contracting Alex Poulemanos introduced H3 employee Logan Walker as "the biller for H3, one of our fast growing customers." Ex. 1-C at APP. 045 (emphasis added). And in April 2024, when Legacy sent Groff a list of outstanding amounts owed under the Agreement, the accounts receivable document prepared by and sent by Legacy named "H3 Medical Clinic" as the "Customer" thirteen times. *See* Ex. 1-E at APP. 052. And in May 2024, Legacy employee Alex Poulemanos sent a Microsoft Teams meeting invitation to Ching and Groff, titled "H3 / Alex." *See* Ex. 1-F at APP. 055.

Around April 1, 2024, Groff executed—again on behalf of H3—a second agreement with Legacy (the "Second Agreement"). *See* Ex. 1 at APP. 002 ¶ 7; Ex. 1-D at APP. 049. The Second Agreement, like the original Agreement, listed Ching and not H3 as the "provider." *See* Ex. 1-D at APP. 049. Like with the original Agreement, Groff executed a Customer Onboarding Document simultaneously with his execution of the Second Agreement, in the same Docusign envelope. *See id.* at APP. 0048. Legacy delivered the countersigned Second Agreement (including the Customer Onboarding Document) to Groff and Ching via an email bearing the subject line "H3 Medical Clinic." *See id.* at APP. 047. In the body of such email, Legacy described the Second Agreement as the "IMP Purchase Agreement for H3 Medical Clinic." *Id.* (emphasis added).

Finally, in July 2024, Legacy, through its lawyers, sent an email to Groff and Ching demanding payment purportedly owed under the Agreement. *See* Ex. 1-G at APP. 056. Such email's subject line identifies the parties to the Agreement:

| Subject: | [EXTERNAL SENDER] Formal Notification: Legacy Medical Consultants, LP / H3 Medical Clinic, LLC #05555337 [ ref:!00D4101MucQ.!500Kc06k8Kw:ref ] |
|---|---|

*Id.* (highlight added). And the first line of the email reiterates that H3, and not Ching, owes the purportedly outstanding balance:

> Legacy Medical Consultants, LP / H3 Medical Clinic, LLC $3,320,260.64

*Id.* Attached to such email is the Agreement, a Customer Onboarding Document identifying H3 as the practice, and twenty-nine invoices addressed to H3. *See id.* at APP. 057-089.

In June 2025, Legacy filed this lawsuit, naming Ching in his individual capacity as the sole defendant. [*See* ECF 1-5 (Original Petition)]. Legacy did not name H3 or Groff as defendants. [*See id.*].

On September 12, 2025, Ching served on Legacy his initial disclosures, which included the following description of Groff's knowledge of relevant facts: "The contract on which Plaintiff's claims are based, <u>which Mr. Groff signed on behalf of H3 Medical Clinic, LLC</u>."  Ex. 2-A at APP. 093 (emphasis added).

Two months later, on November 14, 2025, the deadline to move to join additional parties and to amend pleadings expired.  [*See* ECF 15 at 1].

On December 15, 2025, Ching served his responses to Legacy's first sets of interrogatories and requests for admission.  *See* Ex. 2-B at APP. 097-104; Ex. 2-C at APP. 105-110.  In such responses, Ching reiterated that (1) H3, and not Ching individually, was the purchaser under the Agreement, and (2) Groff acted on behalf of H3.  *See, e.g.,* Ex. 2-B at APP. 099, 100, 102; Ex. 2-C at APP. 109.

On December 18, 2025, Ching filed his Answer, in which he again reiterated multiple times that H3, and not Ching individually, was the purchaser under the Agreement signed by Groff.  [*See* ECF 22].

Over three months after the deadline to do so, Legacy moved for leave to file an amended complaint to join Groff as a defendant on the grounds that Legacy was unaware until late January 2026 that the party to the Agreement for whom Groff signed was H3 and not Ching.  [*See* ECF 28].

## LEGAL STANDARDS

Federal Rule of Civil Procedure 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard."

*Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.) (footnote omitted).  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).  In determining whether good cause has been shown, courts consider "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010).

If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under Rule 15(a)(2).  *See Valcho*, 658 F. Supp. 2d at 814.  Rule 15(a)(2) provides:

> In all other cases [i.e., where, as here, the deadline to amend as a matter of course pursuant to Rule 15(a)(1) has run], a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2).

The Fifth Circuit has held that, despite Rule 15(a)(2)'s "liberal amendment policy," a denial of a motion for leave to amend is appropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed or undue prejudice to the opposing party by virtue of allowance of the amendment." *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013).  "Leave to amend also may be denied when amendment would be futile."  *Id.*

## ARGUMENT

Legacy cannot carry its burden to show good cause exists to allow its requested amendment. The Court should deny Legacy's Motion.

### I. Good cause does not exist to allow Legacy's amendment under Rule 16(b)(4).

Legacy cannot carry its burden under Rule 16(b)(4) to show that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C.*, 315 F.3d at 535. The relevant factors weigh against allowing Legacy's proposed amendment.

#### A. Legacy cannot justify its failure to timely move to amend by insisting it only recently learned Groff signed the Agreement as H3's agent.

Contrary to Legacy's assertions, the first of Rule 16(b)(4)'s factors—the explanation for Legacy's failure to timely move to amend—does not favor granting leave. First, Legacy knew long before it filed this lawsuit that Groff signed the contract on behalf of H3. Second, even after the lawsuit was filed, Ching disclosed to Legacy that Groff signed the Agreement on behalf of H3, but Legacy waited several months to file its Motion.

##### i. Before it filed this lawsuit, Legacy knew Groff signed the Agreement on behalf of H3 and not on behalf of Ching.

Legacy insists that it "could not have moved to amend the Complaint to include Groff any sooner" than February 20, 2026, because it "was not certain of Ching's position regarding the full extent of Groff's agency for H3 until January 23, 2026." [ECF 29 at 7]. Legacy provides no evidence or affidavit testimony regarding the timing of its realization that Groff signed the Agreement on behalf of H3.

Legacy knew long before it filed this lawsuit in June 2025 that Groff signed the Agreement as H3's agent, not Ching's agent, and certainly not in Groff's individual capacity. A wealth of evidence proves Legacy's prior knowledge that Groff signed as an agent of H3.

First, simultaneous with his execution of the Agreement, Groff filled out and submitted a Customer Onboarding Document. *See* Ex. 1 at APP. 001 ¶ 3; Ex. 1-A at APP. 004 (Onboarding Document); *see also* Ex. 1-D at APP. 048-051 (second onboarding document and second agreement in same Docusign envelope). The Onboarding Document should have caused Legacy to understand that its customer under the Agreement was H3, not Ching, and that Groff therefore signed on behalf of H3. The Onboarding Document identified H3 as the "practice," and it listed two H3Medicalclinic.com email addresses as contacts. *See* Ex. 1-A at APP. 048. Perhaps most significantly, the Onboarding Document provided H3's IRS-issued Employer Identification Number ("EIN") in a blank labeled "Tax ID #" and did not provide any tax identification number for Ching. *See* Ex. 1 at APP. 001 ¶ 3. H3's confidential tax information would not be necessary if Ching was the customer instead of H3.

Second, Legacy addressed its invoices to H3, merely with attention to Ching:



Ex. 1-B at APP. 008-044 (invoices).



Ex. 1-G at APP. 061-089 (invoices attached to Legacy's lawyers' email).

Third, Legacy shipped the products at issue in containers addressed to H3, not Ching. *See* Ex. 1 at APP. 002 ¶ 5; *see also* Ex. 1-B at APP. 008-044 (invoices name "H3 Medical Clinic" under "Ship To"); Ex. 1-G at APP. 061-089 (same).

Fourth, Legacy acknowledged in emails that it understood H3, and not Ching, was the customer under the Agreement signed by Groff. For example, in February 2024, over a year before it filed this lawsuit, Legacy's Director of National Contracting Alex Poulemanos introduced H3—not Ching—to a third party as "one of our fast growing customers." Ex. 1-C at APP. 045.

And in April 2024, again over a year before Legacy filed this lawsuit, Poulemanos emailed Groff an Accounts Receivable Report, a record prepared by Legacy listing "outstanding invoices/amounts/etc." Ex. 1-E at APP. 052. Legacy's own report repeatedly named "H3 Medical Clinic," and not "Carlos Ching," as the "customer":

| DATE | TYPE | NO. | CUSTOMER | MEMO | BALANCE |
|------|------|-----|----------|------|---------|
| 2/19/24 | Invoice | 63790 | H3 Medical Clinic | | $202,340.16 |
| 2/19/24 | Invoice | 63789 | H3 Medical Clinic | | $8,430.84 |
| 2/19/24 | Invoice | 63788 | H3 Medical Clinic | | $202,340.16 |
| 2/19/24 | Invoice | 63787 | H3 Medical Clinic | | $8,430.84 |
| 2/9/24 | Invoice | 62853 | H3 Medical Clinic | | $202,340.16 |
| 2/9/24 | Invoice | 62852 | H3 Medical Clinic | | $8,430.84 |
| 2/9/24 | Invoice | 62851 | H3 Medical Clinic | | $202,340.16 |
| 2/9/24 | Invoice | 62850 | H3 Medical Clinic | | $8,430.84 |
| 2/5/24 | Invoice | 62049 | H3 Medical Clinic | | $202,340.16 |
| 2/5/24 | Invoice | 62048 | H3 Medical Clinic | | $8,430.84 |
| 2/5/24 | Invoice | 62047 | H3 Medical Clinic | | $202,340.16 |
| 1/29/24 | Invoice | 61213 | H3 Medical Clinic | | $17,340.16 |
| 1/29/24 | Invoice | 61211 | H3 Medical Clinic | | $202,340.16 |

*Id.* This email demonstrates not only that Legacy viewed H3, and not Ching, as its customer under the Agreement, but also that it viewed Groff, to whom the email was sent, as H3's agent.

Relatedly, in May 2024, Poulemanos sent Groff and Ching a Microsoft Teams meeting invitation titled "H3 / Alex," in apparent recognition that H3 was the customer. *See* Ex. 1-F at APP. 055.

Fifth, Legacy treated H3 as the customer under a Second Agreement executed by Groff in April 2024, even though the Second Agreement, like the original Agreement, listed Ching and not H3 as the "provider." *See* Ex. 1-D at APP. 049. Legacy's Client Relationship Representative

Nichole Infinger delivered the countersigned Second Agreement to Groff and Ching via an email bearing the subject line "H3 Medical Clinic."  *See id.* at APP. 047.  In the body of such email, Infinger described the Second Agreement as the "IMP Purchase Agreement for H3 Medical Clinic."  *Id.* (emphasis added).

Finally, in July 2024, when Legacy, through its attorneys, sent a demand for payment of amounts allegedly owed under the Agreement, the email bore the subject line "Formal Notification: Legacy Medical Consultants, LP / H3 Medical Clinic, LLC #05555337."  Ex. 1-G at APP. 056 (emphasis added).  The body of the email begins with the following text: "Legacy Medical Consultants, LP / H3 Medical Clinic, LLC $3,320,260.64."  *Id.* (emphasis added).  And attached to the email were the Onboarding Document, the Agreement, and twenty-nine invoices addressed to "H3 Medical Clinic."  *See id.* at APP. 057-089.

Tellingly, Legacy offers zero evidence to support its assertion that it was not certain regarding Groff's agency until January 2026.  Nor can it without an affiant perjuring themselves.

At all times prior to the filing of this lawsuit, Legacy treated H3—not Ching—as the customer pursuant to the Agreement.  Thus, Legacy has known for years that Groff signed the Agreement as an agent of H3 and not Ching—and, in any event, certainly not in his individual capacity.  Legacy's assertions that it did not know "the full extent of Groff's agency for H3 until January 23, 2026" and that fact of Groff's agency is "newly revealed" are contrived and unsupported by any evidence.

  ii.  **Even if Legacy did not know before filing this lawsuit that Groff signed the Agreement as H3's agent, Legacy learned the truth months ago.**

Even assuming, *arguendo*, that Legacy was ignorant of the fact that Groff signed the Agreement on behalf of H3 until Legacy learned such information during the lawsuit, Legacy's unsupported assertion that it "was not certain of Ching's position regarding the full extent of

Groff's agency for H3 until January 23, 2026 at the earliest (over two months after the deadline to amend), when Ching served his revised response to Interrogatory 15" would still be false.  [*See* ECF 29 at 7].

First, on September 12, 2025, Ching served his initial disclosures, which named Groff as a person with knowledge of relevant facts and described the subject matter of Groff's knowledge as shown in the third column below:

| John Groff | c/o Jordan Parker<br>CANTEY HANGER LLP<br>600 W. 6th Street, Suite 300<br>Fort Worth, Texas 76102<br>817.877.2800 | The contract on which Plaintiff's claims are based, which Mr. Groff signed on behalf of H3 Medical Clinic, LLC |
|---|---|---|

Ex. 2-A at APP. 093 (highlight added).  **Thus, Legacy was on notice of  "Ching's position regarding the full extent of Groff's agency for H3" <u>over two months before</u> the deadline to amend pleadings and add parties**.  Yet Legacy did not move to amend its pleading until over five months later.

Second, on December 15, 2025, Ching served his responses to Legacy's first sets of interrogatories and requests for admission.  *See* Ex. 2-B at APP. 097-104; Ex. 2-C at APP. 106-110. In response to Interrogatory Number 7, Ching wrote in relevant part, "H3—not Ching individually—ordered products under a contract with legacy."  Ex. 2-B at APP. 099.  Ching reiterated his position in response to Interrogatory Number 9.  *See id.* at APP. 100 ("…it was H3— not Ching individually—who ordered products under a contract with Legacy")].  Interrogatory 15 read, and Ching responded, as follows:

> <u>**Interrogatory No. 15**</u>: Describe in detail the authority of John Groff to act on Your behalf, including, but not limited to, with respect to ordering, receiving, or returning products, and authorizing payments to Legacy.

> **Answer**: John Groff had limited authority to help H3 obtain new business and sign contracts on behalf of the company.

*Id.* at APP. 101-102.  Finally, Request for Admission Number 25 read, and Ching responded, as follows:

> **Request for Admission No. 25:** Admit that John Groff and/or Logan Walker acted on behalf of Ching or H3 in ordering, receiving, and returning products, and/or addressing invoicing or payments with Legacy.
>
> **Response**: Admit as to their acts on behalf of H3, but deny that those individuals were authorized to act on behalf of Ching individually.

Ex. 2-C at APP. 109.  Ching's December 2025 discovery responses made clear that H3, not Ching, was the customer under the Agreement signed by Groff and that Groff had authority to sign agreements on behalf of H3.  Yet Legacy continued to wait, for over nine weeks, to file its Motion.

Third, on December 18, 2025, Ching reiterated his position regarding Groff's agency for H3 via his Answer to Legacy's original petition.  [*See* ECF 22].  The following statements in Ching's Answer explained that H3, and not Ching, was the customer under the Agreement, which means Groff signed the Agreement on behalf of H3, not Ching:

- "Ching is not liable in the capacity in which he was sued. H3 is a limited liability company and a separate legal person—not an assumed name of Ching. Ching did not enter into the agreement in his individual capacity."  [ECF 22 at 9 ¶ 4];

- Admitting "H3 Medical Clinic, LLC ('H3') and Legacy entered into an agreement for the sale of certain human tissue products" but denying Ching took such action,  [*id.* at 1 ¶ 1];

- Admitting "H3 contracted with Legacy" but denying Ching took such action, [*id.* at 2 ¶ 8];

- Admitting "H3 engaged in transactions with Legacy under the Agreement, made payments to Legacy, accepted products shipped from Legacy in Texas, and agreed to Texas law governing the Agreement" but denying Ching took such actions, [*id.* at 2 ¶ 8];

- Admitting "H3 filled out a customer onboarding document," [*id.* at 3 ¶ 12];

- Admitting "H3 executed a purchase agreement with Legacy," [*id.* at 3 ¶ 13];

- Admitting orders were placed with Legacy on behalf of H3 but "den[ying] that orders were placed on his individual behalf," [*id.* at 4 ¶ 17];

- Admitting "H3 entered into the Agreement with Legacy on or about November 7, 2023, in connection with the purchase and sale of human tissue products from Legacy" and "Defendant denies that Ching, individually, entered into the Agreement," [*id.* at 5 ¶ 33];

- Admitting "it was H3—not Ching individually—who accepted, used, and directly benefited from human tissue products by using them to treat patients," [*id.* at 6 ¶ 44];

- Discussion of "Ching's role (on behalf of H3) in purchasing products from Legacy under the contract," [*id.* at 8 ¶ 1 (parentheses in original)]; and

- "The parties agreed that H3's obligation to pay for products…" [*id.* at 9 ¶ 3].

Ching repeatedly and unequivocally put Legacy on notice of "Ching's position regarding the full extent of Groff's agency for H3" in mid-December.  Yet Legacy waited over nine weeks to file its Motion.

Finally, on January 23, 2026, Ching served amended interrogatory responses. Legacy contends that it "was not certain of Ching's position regarding the full extent of Groff's agency for H3 until" it reviewed Ching's amended response to Interrogatory Number 15.  [*See* ECF 29 at 7]. The amended response does not contain any insights that could not already be gleaned from

Ching's September 2025 disclosures, his December 2025 answer, or his December 2025 interrogatory responses. To facilitate the Court's analysis, excerpts from the documents are below:

- September 2025 Initial Disclosures:

| John Groff | c/o Jordan Parker<br>CANTEY HANGER LLP<br>600 W. 6th Street, Suite 300<br>Fort Worth, Texas 76102<br>817.877.2800 | The contract on which Plaintiff's claims are based, which Mr. Groff signed on behalf of H3 Medical Clinic, LLC |
|---|---|---|

Ex. 2-A at APP. 2-A at APP. 093 (highlight added).

- December 2025 interrogatory responses:

> **Answer**: Defendant denied or partially denied allegations in paragraphs 14-17, 19, 21-22, 24-27, 29-30, 33-34, 37-38, 40-44, 46-48, 49-52, 54-57, 59-60, and 63-64 in part based on his view that H3—not Ching individually—ordered products under a contract with Legacy.

> In addition, it was H3—not Ching individually—who ordered products under a contract with Legacy. And in any event, the parties' agreed that H3's payment obligations would be contingent on receiving approval for reimbursement by government/insurance payors.

> **Answer**: John Groff had limited authority to help H3 obtain new business and sign contracts on behalf of the company.

Ex. 2-B at APP. 099, 100, 102 (highlights added).

- December 2025 responses to requests for admission:

> **Request for Admission No. 25:** Admit that John Groff and/or Logan Walker acted on behalf of Ching or H3 in ordering, receiving, and returning products, and/or addressing invoicing or payments with Legacy.

> **Response**: Admit as to their acts on behalf of H3, but deny that those individuals were authorized to act on behalf of Ching individually.

Ex. 2-C at APP. 109.

- December 2025 answer:

> 4.    Ching is not liable in the capacity in which he was sued.  H3 is a limited liability company and a separate legal person—not an assumed name of Ching.  Ching did not enter into the agreement in his individual capacity.

[ECF 22 at 9 ¶ 4].

- January 2026 amended interrogatory responses (which Legacy says was the first time it learned about Ching's position that Groff signed the Agreement as an agent of H3):

> **Answer**: *John Groff had authority to order, receive, or return products on behalf of H3 and to authorize payments to Legacy on behalf of H3. John Groff's dealings with Legacy were authorized actions on behalf of H3.*

[ECF 30 at App. 069].  Legacy's argument that it did not realize Ching's position regarding Groff signing the Agreement on behalf of H3 instead of on behalf of Ching until it received the January 2026 amended interrogatory responses is simply unsupported by any evidence.  Moreover, read in context, it is clear that the amended interrogatory answers were meant to reflect Defendant's (already disclosed) legal and factual position that it was H3—not Ching—who was the contracting party (and thus, the party on whose behalf Groff signed the Agreement).  Nothing in the amended interrogatory answer suggests that Groff was acting without authorization from H3's owner, Ching.  Legacy cannot carry its burden to show it acted diligently to move to amend, and its Motion should be denied.

### iii.    Legacy cannot justify its failure to timely move to amend simply because the parties were exploring settlement.

Legacy is correct that the Parties were—and have been—working together in good faith to attempt an early resolution of the case. [*See* ECF 29 at 7].  But, as a practical matter, the Parties largely continued to litigate this case during those discussions.  From August 20, 2025 to October 15, 2025, the parties prepared and filed briefs regarding whether Legacy's Complaint should be

dismissed. [*See* ECF 5; ECF 16; ECF 17]. And on October 30, 2025, Legacy served seventy-eight discovery requests on Ching. *See* Ex. 2 at APP. 090 ¶ 4. After Ching responded, Legacy served a detailed "deficiency letter" on Ching, and the parties had a number of meet-and-confer calls. [*See* ECF 29 at 4]. These were all appropriate steps to take, but the fact that they were taken demonstrates that the parties continued to litigate this case regardless of whether they were engaged in settlement discussions. Legacy could have moved for leave to file an amended complaint much earlier but chose not to. Legacy cannot show it exercised diligence.

### B. Legacy's proposed amendment is unimportant because it is futile.

The second Rule 16(b)(4) factor—the importance of the amendment—also does not favor Legacy. Legacy's proposed amendment is futile (and thus unimportant) because Legacy cannot state a plausible claim against Groff, and the proposed claims asserted against him his case would fail as a matter of law.

For starters, Groff was not a party to the Agreement in his individual capacity and did not receive or benefit from the products shipped by Legacy. *See* Ex. 1 at APP. 001-002 ¶¶ 3, 4. [*See* ECF 29 at 3; ECF 28-1 at 4 ¶¶ 18-19, 8 ¶ 47 (claims against Groff are premised on his failure to disclose identity of his principle, H3)]. Indeed, Groff is not a healthcare provider, and he has no medical practice or other business where he could even use the skin graft products that Legacy sells. *See* Ex. 1 at APP. 002 ¶ 4.

According to Legacy, Groff should nonetheless be held liable because he supposedly signed the Agreement without disclosing that he did so as an agent of H3. [*See* ECF 29 at 4-5]. Not so. When considering whether to grant a motion to dismiss pursuant to Rule 12(b)(6), courts rightly consider not only the allegations in the complaint but also documents attached to the complaint and documents referenced by the complaint. *See Wilson v. Birnberg*, 569 F. App'x 343,

345 (5th Cir. 2014) ("Generally, any documents that are referenced in the pleadings themselves may be considered in a Rule 12(b)(6) motion.") (brackets omitted, citation omitted); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."); *Sasoro 13, LLC v. 7-Eleven, Inc.*, No. 3:18-CV-03274-N, 2023 WL 2290788, at *2 (N.D. Tex. Feb. 27, 2023) ("Thus, a district court may properly consider contracts or other documents that are not attached to the complaint, but that are referenced within it and attached to a defendant's Rule 12(b)(6) motion.").  Here, when assessing a potential motion to dismiss by Groff, the Court may consider both the Agreement, which is attached to Legacy's Amended Complaint, and the Customer Onboarding Document, which is referenced in paragraphs 11, 17, and 24 of the Amended Complaint and which is in fact part of the Agreement because they were simultaneously executed and delivered to Legacy.  *See* Ex. 1 at APP. 001 ¶ 3.

Via the Customer Onboarding Document, Groff made Legacy aware that its customer under the Agreement was H3, not Ching, and that Groff therefore signed on behalf of H3.  The Onboarding Document identified H3 as the "practice."  *See* Ex. 1-A at APP. 004. The Onboarding Document listed two H3Medicalclinic.com email addresses as Legacy's customer contacts.  *See id.*  And most significantly, the Onboarding Document provided H3's IRS-issued Employer Identification Number ("EIN") in a blank labeled "Tax ID #" and did not provide any tax identification number for Ching.  *See id.*; Ex. 1 at APP. 001 ¶ 3.  H3's tax information would not be necessary if Ching was the customer instead of H3.  And if Ching were the Customer, his social security number would appear in this blank, not H3's EIN.

Because the Customer Onboarding Document was executed contemporaneously with the Agreement, Legacy was notified at the time the Agreement was executed that H3 was its customer and that Groff therefore signed on H3's behalf.  Because Legacy knew that Groff signed on behalf of H3, Legacy fails to state a claim against Groff.  "[W]here it is apparent from the entire contract that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation, it is the corporation's contract." *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 300 (Tex. App.—Dallas 1992, writ denied).  "In such a case, the signing officer is not individually liable on the contract." *Id.*; *see also Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 201 (Tex. App.—Dallas 2011, no pet.) (citing *Ward*).  Accordingly, H3's claims against Groff will be dismissed for failure to state a claim and are therefore futile.

Legacy might argue that, despite the language in its proposed Amended Complaint, its claims against Groff do not depend on his failure to disclose an agency relationship with H3, but rather that he is a party to the contract because he signed a blank labeled "Customer."  Such an argument would lack merit.

Indeed, this Court has already rejected that argument when Legacy advanced it in another case.  *See* Order, *Legacy Medical Consultants, LP v. Foot & Ankle Doctors, Inc., et al.*, No. 4:25-cv-00941-O (N.D. Tex. Feb. 3, 2026), ECF 19 at 11–12 (dismissing Legacy's claims against individual employees of medical practice who, according to Legacy, signed an agreement as the "customer" without denoting they were doing so as agents of the medical practice).  The Agreement itself makes clear that Groff was signing as an agent.  As the Supreme Court has explained, "The mere fact that [a signatory] signed the agreement without indicating his agency is no evidence that he acted individually." *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003).  Indeed, "the failure of a corporate officer to affix his corporate capacity to his signature does not

make it a contract of the individual officer where the contract on its face is a contract of the corporation and the other parties have notice of his relation to the corporation." *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657–58 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *see also J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*, No. 3:10-CV-02489-BF, 2012 WL 4512500, at *4 (N.D. Tex. Oct. 2, 2012) ("Where a corporation enters into a contract, the officer's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract."); *J.B. Int'l, LLC v. William Noble Rare Jewels, L.P.*, No. 3:22-CV-1422-K, 2023 WL 7190642, at *3 (N.D. Tex. Nov. 1, 2023) ("While Mr. Noble signed the agreement without indicating whether he was acting as William Noble Rare Jewels' representative, the Court must enforce the language in the body of a contract clearly indicating that the contract is the store's alone").

This is true even where, as here, the signature block incidentally refers to the agent—instead of the principal—as a party to the contract. *See, e.g., Robertson v. Bland*, 517 S.W.2d 676, 678 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ dism'd) (agent's signature as "Contractor" and signature block's lack of reference to principal did not make agent personally liable where contract contemplated that principal would serve as contractor). As one Texas Court of Appeals has explained:

> One who purports to contract on behalf of a designated person does not manifest by this that he is making a contract on his own account, and only where he so manifests does the agent become a party to a contract which he makes for the principal. In the absence of other facts, the inference is that the parties have agreed that the principal is, and the agent is not, a party. This is true although the agent uses such an expression as, "I will sell."

*Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 455 (Tex. App.—Austin 2023) (quoting Restatement (Second) of Agency § 320 cmt. a (Am. L. Inst. 1958)).

Second, Legacy's excuse for its delay in moving for leave to amend is that it purportedly did not know Groff signed the Agreement as H3's agent until January 2026. If the claims against Groff do not depend on the existence of that agency relationship, Legacy lacks any justification for its Motion's untimeliness.

Because Legacy's proposed additional causes of action would be dismissed pursuant to Rule 12(b)(6), they would have no impact on this case other than increasing the parties' fees and wasting judicial resources. Thus, the proposed amendment is not important.

## II.    Legacy is not entitled to amend under Rule 15(a)(2).

Even under the more liberal standards of Rule 15(a)(2), Legacy is not entitled to amend its pleading. The Fifth Circuit has held that, despite Rule 15(a)(2)'s "liberal amendment policy," a denial of a motion for leave to amend is appropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant," as well as "when amendment would be futile." *Whitley*, 726 F.3d at 648.

Here, as explained in more detail above, Legacy engaged in undue delay by failing to name Groff as a defendant when it first filed this lawsuit in June 2025 because Legacy knew then that its customer under the Agreement was H3 and that Groff therefore signed the Agreement on behalf of H3. And even if Legacy were somehow ignorant of Groff's agency until it received Ching's initial disclosures in September 2025, Legacy still engaged in undue delay by waiting over five months to file its Motion.

Further, as explained in detail above, Legacy's proposed amendment would only add claims which would not survive a Rule 12 motion to dismiss. Accordingly, Legacy's proposed amendment would be futile and should not be permitted. *See Whitley*, 726 F.3d at 648 ("the district court appropriately denied as futile Whitley's motion to amend her complaint" because "the

amended complaint's new causes of action are meritless"); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion.") (affirming denial of motion to amend where proposed amended pleading did "not state a colorable claim").

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Ching prays that the Court deny Legacy's Motion and grant Ching such additional relief, at law and/or in equity, to which he may show himself entitled.

Respectfully submitted,

*/s/ Michael Ackerman*
Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
Michael Ackerman
State Bar No. 24120454
mackerman@canteyhanger.com

CANTEY HANGER LLP
Cantey Hanger Plaza
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
(817) 877-2800  Telephone
(817) 877-2807  Facsimile

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 2, 2026, a true and correct copy of the foregoing was served on counsel for all parties via CM/ECF filing.


*/s/ Michael Ackerman*
Michael Ackerman