IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:25-CV-00874-O |
| **CARLOS CHING D/B/A H3 MEDICAL CLINIC, LLC,** | § § § § | |
| Defendant. | § § | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE
TO FILE A FIRST AMENDED COMPLAINT**

Plaintiff Legacy Medical Consultants, LP ("Legacy") files this Reply in Support of its Motion for Leave to File a First Amended Complaint (the "Motion") [Doc. 28].

**INTRODUCTION**

Ching's Opposition [ECF. 32] ("Opp. Br.") is nothing more than an attempt to prevent Legacy from adding critically important claims against John Groff, who allegedly signed the Agreement on behalf of H3 without disclosing any representative capacity and is therefore liable under Texas law. Ching complains that Legacy's Motion is untimely because Legacy allegedly knew before initiating this action—or at least since receiving initial disclosures in September 2025—that Groff signed on H3's behalf and that H3 was the intended "Customer." Ching points to the Customer Onboarding Document ("COD"), invoices issued to Ching, and various email correspondence to support this contention. But these arguments fail for multiple reasons.

Most fundamentally, consideration of the unincorporated COD to interpret the integrated Agreement is plainly barred under the parol evidence rule. Any reference to H3 in that document cannot change the fact that the only "Customer" named in the Agreement is Ching. Moreover, filing a motion to amend immediately upon receipt of initial disclosures would have been premature, as

1

Ching did not file his answer and affirmative defenses until December 18, 2025, and substantive discovery on the issue of Groff's agency was not fully resolved until January 23, 2206. The undeniable reality remains that under Texas law, Groff was required to disclose his true principal in the Agreement itself. Yet Groff executed the Agreement signing as the "Customer" without indicating he was doing so on behalf of H3. If Groff truly was acting on behalf of H3, his failure to disclose that agency makes him personally liable under the Agreement and Texas law.

Legacy has demonstrated good cause to amend the Scheduling Order under Rule 16(b). Legacy filed the instant Motion in a timely manner after reviewing Ching's sworn Interrogatory responses—which were first served after the amended pleadings deadline—that showed Groff did not sign as his agent. The proposed amendment to the Complaint is vital because adding claims against Groff provides Legacy with an alternative means of recovery under Texas law. And there is no likelihood that the parties will suffer any prejudice as a result of the amendment. Legacy likewise meets the liberal standard for amending the pleading under Rule 15(a). Among other things, there is no evidence that Legacy is acting in bad faith, this is the first time Legacy moves to amend the operative pleading, and as explained above, Legacy's amendment is not futile.

Accordingly, the Court should grant Legacy's Motion and allow it to file its First Amended Complaint.

## ARGUMENT

**A.  Legacy's Motion Is Timely.**

  **1.  The Parol Evidence Rule Bars Consideration of Extrinsic Evidence to Rewrite the Plain Terms of the Agreement.**

Ching argues that Legacy unduly delayed filing this Motion because it knew before it brought this lawsuit that Groff signed the Agreement on behalf of H3 and, as a result, the Motion is barred under both Rules 15(a)(2) and 16(b)(4). Opp. Br. [Doc. 32] p. 8-12, 22. Ching specifically claims that the fact that the COD—a separate document which was executed contemporaneously with the

2

Agreement, but was not incorporated into it—identified H3 as Ching's practice establishes that Legacy somehow could assume Groff was signing on behalf of H3 and not Ching. *Id.* at p. 9.

Fatal to Ching's arguments, however, is that the terms of the COD simply cannot be considered in interpreting the Agreement itself. "The parol evidence rule bars consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019); *see, e.g.*, *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports."); *CC&T Enters., LLC v. Tex. 1031 Exch. Co.*, 673 S.W.3d 631, 642 (Tex. App.—San Antonio 2023, no pet).

This rule applies with even greater force where—as here—the relevant agreement includes an integration clause and an express no oral modification requirement. *See* Pl.'s Motion App. [Doc. 30] at APP. 017 ("This Agreement contains the entire agreement between the Parties concerning the subject matter hereof and is governed by Texas law. This agreement may be amended or modified only by a written agreement signed by both parties.")); *see, e.g.*, *Bandera Drilling Co., Inc. v. Sledge Drilling Corp.*, 293 S.W.3d 867, 871 (Tex. App.—Eastland 2009, no pet.) (citing *ISG State Ops., Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 (Tex. App.—Eastland 2007, pet. denied)) ("When a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence."); *see also* TEX. BUS. & COM. CODE § 2.202 ("Terms . . . set forth in a writing intended by the parties as a final expression of any agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement[.]"); *id.* at § 2.209(b) ("A signed

agreement which excludes modification . . . except by a signed writing cannot be otherwise modified[.]").

Here, the Agreement contains an integration clause so parol evidence, such as the unincorporated COD, is wholly irrelevant in determining whether Groff's alleged agency to H3 was properly disclosed. Instead, this Court must look to the four corners of the Agreement itself. *See Wright Grp. Architects-Planners, PLLC v. Pierce*, 343 S.W.3d 196, 200 (Tex. App.—Dallas 2011, no pet.); *Martin v. Xarin Real Estate, Inc.*, 703 F.2d 883, 891 (5th Cir. 1983); *see generally Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189-193 (Tex. App. - Dallas 2013, no pet.). Critically, Ching does not dispute that the **Agreement** itself fails to identify H3, nor does he claim that the **Agreement** discloses that Groff is signing in any representative capacity on behalf of H3. Indeed, the Agreement only identifies Ching as the "Customer" and does not reference H3 even a single time. Groff signs on the "Customer" line in the Agreement, presumably as Ching's agent. If Ching's present defense is to be believed and Groff truly signed on behalf of H3, then, his failure to state as much anywhere in the Agreement itself could make him potentially liable in his individual capacity for the payments thereunder. *Wright Grp. Architects-Planners, PLLC*, 343 S.W.3d at 201.[1]

Moreover, even if the COD did somehow put Legacy on notice that Groff was signing on H3's behalf, Legacy's purported knowledge of the same is of no importance under Texas law. "Where, as here, a written contract is signed in the name of a party who happens to be acting as an agent, but the contract gives no indication that any agency exists or that the party is signing other than as a principal or with any qualifications, the agent is bound **even though the other contracting party knows the identity of his principal**." *See Martin v. Xarin Real Estate, Inc.*, 703 F.2d 883, 891 (5th Cir.

---

[1] Even if the Court could consider the COD, which it cannot, it is still wholly unclear from the face of that document that H3 was actually intended as the true customer under the Agreement, and Ching simply cherry picks certain information from the COD to argue otherwise. In fact, the COD, which purports to identify "Customer Information," expressly lists "Carlos A. Ching" as the "Provider Name" in the very first line of the document, and only later identifies H3 as the "Practice Name."

4

1983) (emphasis added); *see also Am. Petrofina Co. of Tex. v. Bryan*, 519 S.W.2d 484, 487 (Tex. App.—El Paso 1975, no pet.).

In *American Petrofina Company of Texas*, for example, two individuals entered into contracts whereby their corporation, Bryan Brothers Oil Company, Inc. ("Bryan Bros."), became a distributor and jobber for American Petrofina. *Am. Petrofina Co. of Tex.*, 519 S.W.2d at 485-86. At the same time, the individuals also entered into a guaranty of account, which was signed by the individuals themselves and made no reference to Bryan Bros. *Id.* at 486-87. At trial, the judge admitted extrinsic evidence showing that the individual defendants intended to sign the guaranty on behalf of Bryan Bros. *Id.* at 487. The Court of Civil Appeals reversed, however, finding that the parol evidence rule barred such evidence. *Id.* Moreover, in response to the individual defendants' assertions that they communicated their intent to sign on behalf of Bryan Bros. when they executed the guaranty, the Court emphasized that

> Even if we assume that the Appellees were crying to the heavens that they would not be bound individually by the guaranty and that only their corporate principal would be bound, the exclusionary rule controls as to this instrument. **The fact that a person is under an agency relation to another which is disclosed does not prevent him from becoming personally liable where the terms of the contract clearly establish the personal obligation**.

*Id.* Accordingly the claim that the COD or other extra-contractual evidence absolves Groff of personal liability can be easily disregarded.

Ching similarly argues that Legacy knew H3 was the true customer because it addressed invoices to H3, sent emails and Microsoft Teams invites purportedly acknowledging H3 as the customer, treated H3 as the customer under a second agreement executed in March 2024, and Legacy's former counsel sent Legacy's initial demand for payment to H3. Opp. Br. [Doc. 32] p. 9-12. Notably absent from Ching's brief is any assertion that Legacy's or Ching's actions and/or correspondence modified or revised the express terms of the contract—which defines the "Customer" as Ching, not

5

H3. Nor could they have done, as the Agreement requires all amendments to be in writing and signed by both parties. *See* Pl.'s Motion App. [Doc. 30] at 017.

In any event, the evidence Ching relies on to show that Legacy "knew" H3 was the intended customer under the Agreement is anything but unambiguous. Indeed, the referenced invoices were all sent to **Ching's** attention (Def. App. [Doc. 33] 008-44); **Ching** was also listed as the "Customer" is the second agreement the parties executed (which similarly fails to identify H3 anywhere, despite also being signed by Groff) (Def. App. [Doc. 33] 049-50, 61-89); and **Ching** was copied on much of the correspondence upon which he now relies, including the correspondence from Legacy's former counsel, which is addressed to "**Mr. Carlos Ching** et al." (Def. App. [Doc. 33] 047, 55-56). Moreover, discovery has since revealed that on one occasion, Groff directly informed Legacy that **Ching** was responsible for paying all invoices. Ex. 1 ("I have forwarded this email to Carlos. **He pays the invoices** and I will follow up with him." (emphasis added)). Ching's assertions regarding Legacy's "knowledge" of Groff's alleged undisclosed agency to H3 before the lawsuit was filed fails to withstand careful scrutiny.

> **2.    Legacy Promptly Moved to Amend After Discovery Revealed the Extent of Ching's Defense.**

Ching next argues that even if Legacy did not know that Groff intended to sign on behalf of H3 before filing the lawsuit, it was still notified of the same in Ching's initial disclosures, which were served on September 12, 2025. Opp. Br. [Doc. 32] at p. 13. But the fact that Groff's purported agency to H3 was raised in initial disclosures does not change the analysis here. To be clear, Ching's initial disclosures are unsworn and are solely intended to identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party *may* use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i) (emphasis added). By definition, they are

6

not intended to put the parties on notice of all affirmative defenses that will be raised or all theories of the case upon which a defendant intends to rely.

Indeed, filing a motion to amend immediately after the service of initial disclosures would have been premature, as the nature of Ching's defense to liability under the Agreement and the scope of Groff's purported agency for H3 had not yet been fully developed. As an initial matter, the parties were engaged in settlement discussions until December 2025 in the hopes of resolving the case without the need for extensive discovery. Contrary to Ching's assertions, while the parties did brief Ching's Motion to Dismiss and serve some discovery,[2] these actions were all taken solely to secure the parties' rights and ensure the matter could proceed if settlement discussions dissolved.

Most importantly, as Ching admits, he first filed his Answer and affirmative defenses related to this issue on December 18, 2025 (more than a month after the deadline to amend the pleadings had already passed), and did not mention Groff a single time. Similarly, substantive discovery responses related to this issue were not served until December 15, 2025, at which time, Ching disclosed in response to Interrogatory No. 15 that "John Groff had limited authority to help H3 obtain new business and sign contracts on behalf of the company." *See* Pl.s Motion App. [Doc. 30] at 053. On January 5, 2026, Legacy served a deficiency letter, which, as it relates to Interrogatory No. 15, specifically sought more information about the scope of Groff's alleged authority and the dates that such authority was granted and/or rescinded. *Id.* at App. 060. Counsel for Ching agreed to serve amended responses to this request, as well as others (*see* Pl.s Motion App. [Doc. 30] at 075), and counsel for Legacy reasonably assumed that more information about Groff's agency for H3—such as whether he had been granted authority to act on H3's behalf before the Agreement was executed—would be forthcoming. On January 23, 2026, Ching served a revised response to Interrogatory No. 15 further explaining "**John Groff had authority to order, receive, or return products on behalf of**

---

[2] Notably, Ching has yet to serve any discovery requests of his own.

***H3 and to authorize payments to Legacy on behalf of H3<u>. John Groff's dealings with Legacy were authorized actions on behalf of H3</u>.***" *See* Pl.'s Motion App. at 069 (underlined emphasis added)). As a result, the scope of Groff's agency and the actions he took on H3's behalf in his dealings with Legacy were not fully revealed until January 23, 2026, at the earliest.[3] Legacy therefore filed its Motion at the earliest opportunity.

**B.     Legacy's Amendment Is Not Futile.**

Ching also asserts that Legacy's proposed amendment is futile and precluded under Rules 15 and 16 because Groff was not a party to, and did not receive any benefits from the Agreement. Opp. Br. [Doc. 32] at p. 18. To be clear, Legacy does not argue that Groff himself was a party to the Agreement. But as explained more fully above, and in Legacy's opening brief, Groff does not have to be a party to be held personally liable because his agency to H3 was not properly disclosed in the Agreement. Ching confusingly claims that because the Court is entitled to consider the COD upon a motion to dismiss, it must conclude that Groff's agency was properly disclosed in the Agreement. Opp. Br. [Doc. 32] at p. 18-20. But while the Court may review the COD to generally assess Legacy's claims upon a motion to dismiss, the parol evidence rule still bars consideration of the COD to interpret the Agreement itself, which was fully integrated and did not incorporate the COD. Accordingly, the generic reference to H3 in the COD cannot alter the Agreement's terms.

Finally, Ching argues that the Agreement clearly indicates Groff signed as an agent. Not so. But even if it did, the Agreement still does not name the correct principal. Per Texas law, agents who sign for a fictitious principal are personally liable if they fail to disclose the true principal. *Cont'l Mach. Co., Inc. v. Korn*, No. 3:19-cv-769-L, 2020 WL 521092, at *5 (N.D. Tex. Jan. 16, 2020). Here, the only "Customer" in the Agreement is Ching, so if any agent is disclosed, it is **Ching**, not H3.

---

[3] In fact, Legacy may yet learn additional information about Groff's potential agency to H3 and Ching's understanding of that agency (including when that agency began) during Ching's deposition, which has not yet taken place.

*Legacy Medical Consultants, LP v. Foot & Ankle Doctors, Inc., et al.*, No. 4:25-cv-00941-O (N.D. Tex. Feb. 3, 2026) does not support Ching's position. In that case, the Court dismissed the claims against the individuals who had signed the agreement at issue because, as the practice (Foot & Ankle Doctors, Inc.) was expressly named as the "Customer," "the reasonable inference [was] that they were signing on behalf of [the practice]—the customer." Applying the Court's logic to this case, because Ching is the named Customer in the Agreement, the only "reasonable inference" is that Groff signed for Ching, not H3, which is not mentioned in the Agreement at all.

The other cases Ching relies on are likewise inapposite. *Latch v. Gratty, Inc.* is irrelevant here as that case stands for the proposition that an individual will not be personally liable for tortious interference with contract, despite not disclosing his agency in a purportedly tortiously interfering agreement, where no evidence shows that the individual acted contrary to the principal's interests. 107 S.W.3d 543, 545-46 (Tex. 2003). However, the *Latch* court plainly acknowledged that "an agent who signs a contract on behalf of an undisclosed principal is liable on the contract." *Id.* at 546. Ching also obviously misses the key point of the remaining cases he cites, which all show that agency is only properly disclosed where the principal is expressly mentioned in the relevant agreement itself.[4]

---

[4] *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 658-59 (Tex. App.—Houston [1st Dist.] 1986, writ refused n.r.e.) ("[T]he failure of a corporate officer to affix his corporate capacity to his signature does not make it a contract of the individual officer where the contract **on its face is a contract of the corporation** and the other parties have notice of his relation to the corporation." (emphasis added)); *J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*, No. 3:10-CV-02489-BF, 2012 WL 4512500, at *4 (N.D. Tex. Oct. 2, 2012) (noting in a case where the relevant corporation was mentioned in the terms of the Agreement that "[w]here a **corporation** enters into a contract, the officer's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract."); *J.B. Int'l, LLC v. William Noble Rare Jewels, L.P.*, No. 3:22-CV-1422-K, 2023 WL 7190642, at *3 (N.D. Tex. Nov. 1, 2023) ("While Mr. Noble signed the agreement without indicating whether he was acting as William Noble Rare Jewels' representative, **the Court must enforce the language in the body of a contract clearly indicating that he contract is the store's alone**" because, among other things, "[t]he agreement expressly state[d] that '**William Noble Rare Jewels, L.P.** . . . agrees to pay the amount due to J.B. International'" (emphases added)); *Robertson v. Bland*, 517 S.W.2d 676, 678 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ dism'd) ("**[W]here, in the body of the contract, it purports to be a contract of the corporation**, the signature of the name of the officer with or without an affix designating his representative capacity does not render it his personal contract." (emphasis added)); *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 453-56 (Tex. App.—Austin 2023, no pet.) (finding individual defendant was not personally liable where the name of the principal was expressly disclosed

## CONCLUSION

For the foregoing reasons, Legacy respectfully requests the Court grant its Motion for Leave to file a First Amended Complaint.

Date: March 6, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Megan A. Altobelli*
Audrey F. Momanaee
Federal Bar No. 724132
Texas Bar No. 24055993
Gregory J. Moore (*pro hac vice*)
Texas Bar No. 24055999
717 Texas Avenue, Suite 1400
Houston, TX 77002
(713) 632-8613
Audrey.Momanaee@BlankRome.com
Gregory.Moore@BlankRome.com

-and-

'Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on March 6, 2026, true and correct copies of the foregoing Reply Brief in Further Support of Plaintiff's Motion for Leave to File Amended Complaint was electronically served upon all counsel of record via the Court's CM/ECF system in accordance with Fed. R. Civ. P. 5(b)(2).

*/s/ Megan A. Altobelli*
MEGAN A. ALTOBELLI

---

in the body of the agreement and in the signature block); *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 300 (Tex. App.—Dallas 1992) ("Here, **the four corners of the agreement clearly show, as a matter of law, that Ward signed as representative of the estate and that the estate alone would be liable for payment**." (emphasis added)).

10